Edgar R. Cataxinos (7162)
  cataxinos@mcgiplaw.com
James E Magleby (7247)
  magleby@mcgiplaw.com
Kennedy D. Nate (14266)
  nate@mcgiplaw.com
**MAGLEBY CATAXINOS & GREENWOOD**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile:  801.359.9011

Attorneys for Plaintiff Fundme.com, Inc.

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **FUNDME.COM, INC., a Delaware corporation,** | **COMPLAINT AND JURY DEMAND** |
| **Plaintiff,** | |
| **v.** | |
| **GOFUNDME, INC., a Delaware corporation** | **Case No.:  2:16-cv-00104-PMW** |
| **Defendant.** | **Honorable Paul M. Warner** |

Fundme.com ("Plaintiff" or "Fundme.com") alleges and complains against

Defendant GoFundMe, Inc. ("Defendant" or "GFM"), as follows:

### PARTIES

1.      Plaintiff Fundme.com, Inc. is a Delaware corporation with its principal

place of business in Salt Lake City, Utah.

2.      Defendant GoFundMe, Inc. is a Delaware corporation.  Upon information

and belief, Defendant's principal place of business is located at 1010 Second Avenue,

Suite 1770, San Diego, California 92101.  Defendant carries on business and is

otherwise found in Salt Lake County, Utah because its products and services are

marketed via the internet, are available in Utah, and have been used by Utah residents.

## JURISDICTION AND VENUE

3.      This action arises and is brought under the Lanham Act, 15 U.S.C. §

1125.

4.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, 28

USC § 1331, and 28 U.S.C. § 1338 because this action arises under the laws of the

United States and relates to trademarks.

5.      This Court has supplemental jurisdiction over Plaintiff's state-law claims

pursuant to 28 U.S.C. § 1367, in that the state law claims are integrally related to the

federal claims and arise from a common nucleus of operative facts, such that the

resolution of all claims herein is in the interest of judicial economy.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

7.      This Court has personal jurisdiction over Defendant GFM because GFM

solicits and conducts business in Utah, provides products and services to Utah, and

provides and utilizes an interactive website that allows and directs commerce into Utah.

## GENERAL ALLEGATIONS

### Fundme.com's Domain

8.      The Fundme.com domain at www.fundme.com was registered on or

around January 22, 1999:

```
Domain Name: FUNDME.COM
Registrar: GODADDY.COM, LLC
Whois Server: whois.godaddy.com
Referral URL: http://registrar.godaddy.com
Name Server: MATT.NS.CLOUDFLARE.COM
Name Server: ROXY.NS.CLOUDFLARE.COM
Status: clientDeleteProhibited
Status: clientRenewProhibited
Status: clientTransferProhibited
Status: clientUpdateProhibited
Updated Date: 10-nov-2014
Creation Date: 22-jan-1999
Expiration Date: 22-jan-2023
```

9.     Upon information and belief, the www.fundme.com domain was used

beginning shortly after its original registration in 1999, and has remained in continuous

use since that time.

10.    For example, Fundme.com has screenshots of www.fundme.com,

demonstrating a use in commerce on May 17, 2005, and December 24, 2007,

respectively.

<u>Fundme.com's FUNDME.COM Trademark</u>

11.    Fundme.com, either itself or through one or more of its affiliates or

predecessors, has used the "FUNDME.COM" mark in commerce in the United States

since at least May 2005, if not as early as 1999.

12.    Use of the FUNDME.COM mark has created common law and statutory

rights, which rights arose on the date of its first use and have since expanded

nationwide.

13.    On March 14, 2013, Kela Capital, Inc. ("Kela"), filed an application with the

United States Patent and Trademark Office ("USPTO") to register the FUNDME.COM

mark.

14.     The March 14, 2013 application to register the FUNDME.COM mark incorrectly stated that the first use in commerce of the FUNDME.COM mark was March 7, 2013, when in actuality the mark had been used since the registration of the domain www.fundme.com in 1999, but at least since May 17, 2005,

15.     The FUNDME.COM mark was duly registered on October 22, 2013, with registration number 4,421,467.  A true and accurate copy of the Registration Certificate of the FUNDME.COM mark is attached as Exhibit "1" and is hereby incorporated by reference.

16.     Fundme.com, either itself or through its predecessor(s), has been continuously using the FUNDME.COM mark since its first use in commerce.

17.     The scope of the FUNDME.COM mark encompasses crowdfunding to raise venture capital for business start-up and business expansion, which falls within the Class 042 classification of goods according to the International Classification of Good and Services for the Purposes of the Registration of Marks.

<u>Assignment of the FUNDME.COM Mark</u>
<u>and Transfer of the www.fundme.com Domain to Fundme.com</u>

18.     On or about February 27, 2014, Kela transferred the www.fundme.com domain to Fundme.com.

19.     On July 23, 2014, Kela assigned its entire interest in the Mark to Fundme.com.  A true and accurate copy of the Trademark Assignment Agreement ("Assignment Agreement") is attached hereto as Exhibit "2" and hereby incorporated by reference.

20.     As a result of the Assignment Agreement, Fundme.com is the sole owner

of the registered "FUNDME.COM" mark and all statutory and common law rights associated therewith (the "Mark").

21.     Since the assignment, Fundme.com has continued to use the Mark in commerce, specifically to assist users of its website to raise venture capital for business start-up and business expansion.

<u>GFM Threatens to Sue Fundme.com</u>

22.     On January 25, 2016, Defendant GFM sent a letter (the "Demand Letter") to Fundme.com, claiming that the Mark infringed on GFM's GOFUNDME mark.  A true and accurate copy of the Demand Letter is attached as Exhibit "3" and hereby incorporated by reference.

23.     The rights asserted in the Demand Letter purport to arise out of a trademark registration for the GOFUNDME mark.

24.     The application for the GOFUNDME mark was filed on January 23, 2012, and asserted a first use in commerce of May 1, 2010.

25.     Accordingly, and as noted above, the asserted first use in commerce of the GOFUNDME mark is after the actual first use in commerce of the FUNDME.COM Mark.

26.     The GOFUNDME mark was registered on September 4, 2012, with registration number 4,201,895.  A true and accurate copy of GFM's Registration Certificate is attached as Exhibit "4".

27.     As described in the registration certificate, the GOFUNDME mark is limited to <u>only</u> "<u>charitable fundraising services</u>, namely, by providing individuals with the

information and opportunity to make monetary donations <u>to their favorite charity</u>."  [*See id.* (emphasis added)].

28.    In the Demand Letter, GFM claimed that Fundme.com had infringed on GFM's mark because <u>www.fundme.com</u> had shifted from its registered purpose of raising venture capital for business start-up and business expansion into the "personal and charitable crowdfunding spaces."   [*See* Demand Letter, Ex. 3]

29.    The Demand Letter acknowledges that there will not be confusion between the FUNDME.COM Mark and GFM's GOFUNDME mark, so long as the FUNDME.COM mark is not used in the "charitable space":

> . . .  the FUNDME.COM MARK  . . . was registered for "providing a web site featuring technology that enables users to raise venture capital for business start-up and business expansion," <u>not</u> for personal and charitable campaigns.  The *shift of use of the FUNDME.COM mark from its registered purpose* to the personal and *charitable space* leads to a substantial likelihood of confusion between the two marks.

[Demand Letter at 1 (underline emphasis in original) (italic emphasis added)].

30.    GFM's demand expressly and implicitly recognizes that a "shift of use of the [GOFUNDME] mark from its registered purpose to the [business crowdfunding] space leads to a substantial likelihood of confusion between the two marks."  [*Id.* at 1].

31.    In the Demand Letter, GFM did <u>not</u> demand that Fundme.com cease using the FUNDME.COM mark for its registered purpose of raising venture capital for business start-up and business expansion.  [*See Id.* at 1-2].

32.    GFM's demand expressly and implicitly recognizes that use of the FUNDME.COM mark has not, is not, and will not create any confusion and will not infringe upon the allowed scope of use of the GOFUNDME mark, so long as

Fundme.com does not use its FUNDME.COM mark in conjunction with "charitable fundraising services, namely, by providing individuals with the information and opportunity to make monetary donations to their favorite charity."

33.     This conclusion is further supported by GFM's decision not to purchase or object to the use of the FUNDME.COM mark in 2013, even though the Mark was offered for sale to GFM, and GFM was aware that www.fundme.com was at that time generating approximately 40,000 visitors a year.

34.     Fundme.com has never knowingly used www.fundme.com or the FUNDME.COM mark in conjunction with "charitable fundraising services . . .  by providing individuals with the information and opportunity to make monetary donations to their favorite charity."

<u>GFM's Expanded Use of the GOFUNDME Mark Beyond Charitable Use, Into Raising Money for Businesses, Infringes on the FUNDME.COM Mark</u>

35.     In reviewing the merits of Defendant GFM's allegations in its Demand Letter, Fundme.com has discovered that GFM is infringing on its FUNDME.COM Mark.

36.     Rather than limiting the scope of its crowdfunding to "charitable fundraising services . . .  by providing individuals with the information and opportunity to make monetary donations to their favorite charity," GFM has expanded its crowdfunding campaigns into the areas covered by Fundme.com's FUNDME.COM mark, namely crowdfunding to raise money for businesses.

37.     In particular, at some time in the past, GFM added a new page on its website, www.gofundme.com, that actively solicits crowdfunding for "Businesses and Entrepreneurs," to "[r]aise money to start your own business, or to improve your existing

establishment," in direct violation of the scope of use protected by the FUNDME.COM mark:



[Business & Entrepreneurs page, https://www.gofundme.com/Business-Entrepreneurs/ (last visited February 4, 2016)].

38.     GFM's expansion into crowdfunding for business startup and/or expansion infringes on Fundme.com's mark.

39.     GFM's creation of the Business & Entrepreneurs pages was done for the express purpose of expanding the scope of Defendant GFM's crowdfunding campaigns and was done with knowing disregard for the rights of Fundme.com.

40.     Upon information and belief, Defendant GFM is also purchasing key words like "fundme.com" with the intent to divert potential consumers interested in raising money for business startup and/or expansion to GFM's website instead of Fundme.com's website.

41.     By purchasing "fundme.com" and marketing its services beyond the allowed scope of use for its GOFUNDME mark to potential customers interested in

raising money for business startup and/or expansion, GFM is infringing upon the FUNDME.COM mark, including by diverting sales and diluting the distinctiveness of the Mark in its registered scope of use.

42. GFM's actions have caused and will continue to cause mistake or deception as to the source or origin of GFM's services and are likely to falsely suggest sponsorship, connection, license, endorsement or association of GFM with Fundme.com.

### Fundme.com's Demand that Defendant GFM Cease its Infringing Conduct

43. On February 4, 2016, Fundme.com made demand upon Defendant GFM that it immediately cease all infringing uses, that is, that GFM cease marketing its crowdfunding services to potential customers interested in raising money for business startup and/or expansion.

44. However, even if GFM complies with Fundme.com's demand, it is still liable for damages for its past infringement for crowdfunding to raise money for business startup and/or expansion.

### Fundme.com's Title III Market Expansion

45. In or around May 2016, a new type of crowdfunding for purposes of raising capital for business from non-accredited investors will be allowed for the first time in the United States.

46. This new type of crowdfunding is sometimes called "Title III crowdfunding" and allows companies to advertise worldwide for investors, to raise up to $1 million in capital every 12 months, and to accept investment from either accredited or non-

accredited investors.

47.     In anticipation of Title III crowdfunding being allowed in the United States, Fundme.com has expended substantial time, money, and effort to expand its business through www.fundme.com into the Title III market, including as a portal for businesses looking to use Title III crowdfunding to raise capital.

48.     Upon information and belief, Defendant GFM also intends to expand its business into the Title III crowdfunding market, which would be a clear infringement on the scope of Fundme.com's FUNDME.COM mark.

49.     If GFM continues providing crowdfunding services to raise money for business startup and/or expansion, including by expanding into the Title III crowdfunding market, Fundme.com will be irreparably harmed, and is and will be entitled to injunctive relief.

<u>Defendant GFM's New Trademark Application</u>

50.     On August 10, 2015, Defendant GFM applied for registration of a new "GOFUNDME" mark (the "New GFM Mark"):



[*See* UNITED STATES PATENT AND TRADEMARK OFFICE,

http://tsdr.uspto.gov/#caseNumber=86720328&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited February 2, 2016)].

51.     Although GFM's application states in part that it is for "[o]n-line charitable fundraising services," it also states that the scope of its use will include "[p]roviding an interactive website featuring crowd funding services in the nature of accepting and administering monetary contributions from a group of individuals." *See id.*

52.     The scope of proposed use for the New GFM Mark is ambiguous, and could be interpreted to go beyond charitable fundraising services, to include Fundme.com's line of business and to infringe upon the scope of use of the FUNDME.COM mark.

53.     Fundme.com is entitled to a declaration that GFM is not entitled to expand the scope of its trademark rights through the New GFM Mark to overlap or infringe upon the scope of Fundme.com's existing rights in the FUNDME.COM mark.

## FIRST CLAIM FOR RELIEF
### (Trademark Infringement – 15 U.S.C. § 1114)

54.     Plaintiff Fundme.com hereby incorporates by reference the allegations contained in the above paragraphs.

55.     Defendant GFM does not have authorization to use the FUNDME.COM Mark for purposes of raising venture capital for business start-up and business expansion.

56.     The FUNDME.COM mark is distinctive and entitled to protection as a trademark pursuant to 15 U.S.C. § 1127.

57.     Fundme.com owns the FUNDME.COM mark and the Mark has been properly registered with the USPTO.

58.     Registration of the FUNDME.COM mark constitutes prima facie evidence

of the validity, ownership, and right to exclusive use of the Mark, and provides constructive notice of ownership.

59.    Defendant GFM has used and continues to use the FUNDME.COM mark in connection with the sale, offering for sale, distribution, or advertising of goods or services.

60.    GFM offers products or services that compete with Fundme.com's products or services, are in a substantially similar market as Fundme.com's products or services, and are advertised to the same type of consumer targeted by Fundme.com.

61.    If Defendant GFM continues to use the FUNDME.COM mark to raise money for business startup and/or expansion, there is a likelihood of forward confusion among consumers as to the source of the parties' respective goods and services and/or reverse confusion by causing consumers to believe that the FUNDME.COM mark is connected to or sponsored by GFM.

62.    Upon information and belief, GFM already has or is attempting to swamp or usurp Fundme.com's FUNDME.COM mark.

63.    Defendant GFM's unauthorized infringement of the FUNDME.COM mark to raise money for business startup and/or expansion is in violation of the Lanham Act, 15 U.S.C. § 1114(1).

64.    As a direct and proximate result of Defendant GFM's unauthorized use of the FUNDME.COM mark to raise money for business startup and/or expansion, Fundme.com has suffered irreparable injuries and damages in an amount to be proven at trial.

65.     Pursuant to 15 U.S.C. § 1116(a), Fundme.com is entitled to an injunction prohibiting Defendant GFM from further using the FUNDME.COM mark to raise money for business startup and/or expansion, including an injunction precluding GFM from entering into the Title III market.

66.     Pursuant to 15 U.S.C. § 1117(a), Fundme.com is entitled to recover the profits Defendant GFM has derived or will derive in connections with its unauthorized use of the FUNDME.COM mark to raise money for business startup and/or expansion.

67.     Pursuant to 15 U.S.C. § 1117(a), Fundme.com is entitled to recover its damages incurred as a result of Defendant GMF's unauthorized use of the FUNDME.COM mark to raise money for business startup and/or expansion.

68.     Pursuant to 15 U.S.C. § 1117(b), Fundme.com is entitled to recover treble damages from Defendant GFM.

69.     Pursuant to 15 U.S.C. § 1117(a), Fundme.com is entitled to recover the attorney fees and costs incurred in pursuing this claim.

## SECOND CLAIM FOR RELIEF
### (Unfair Competition under Utah Code Ann. § 13-5a-101 *et seq*)

70.     Plaintiff Fundme.com hereby incorporates by reference the allegations contained in the above paragraphs.

71.     The FUNDME.COM mark is a registered trademark with the USPTO.

72.     The FUNDME.COM mark is owned by Fundme.com.

73.     Defendant GFM's unauthorized use of the FUNDME.COM mark to raise money for business startup and/or expansion constitutes a use of Fundme.com's mark in connection with the sale, offering for sale, distribution, or advertising of goods or

services.

74.     Defendant GFM is not authorized to use the FUNDME.COM mark to raise money for business startup and/or expansion.

75.     By reason of the foregoing, Defendant GFM has engaged in unfair competition as defined by Utah Code Ann. section 13-5a-103.

76.     As a direct and proximate result of Defendant GFM's unauthorized use of the FUNDME.COM mark and unfair competition, Fundme.com has suffered damages in an amount to be proven at trial.

77.     Defendant GFM's actions constitute willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of Fundme.com, which is therefore entitled to an award of punitive damages pursuant to Utah Code section 78B-8-201 and 13-5a-103.

### THIRD CLAIM FOR RELIEF
**(Unfair Competition and False Designation
of Origin – 15 U.S.C. § 1125)**

78.     Plaintiff Fundme.com hereby incorporates by reference the allegations contained in the above paragraphs.

79.     The unauthorized use by Defendant GFM of the FUNDME.COM Mark to raise money for business startup and/or expansion in connection with GFM's business is likely to deceive the public that GFM's products are endorsed, sponsored, approved or are in some way affiliated with Fundme.com and thus constitutes trademark infringement, unfair competition, and is likely to cause the Mark to lose its significance as an indicator of origin.

80.     Upon information and belief, Defendant GFM is using keywords such as "fundme.com," i.e., the FUNDME.COM mark, in connection with false and misleading descriptions or representations in commercial advertising or promotion, to solicit customers interested in raising money for business startup and/or expansion, and thereby misrepresenting the nature, characteristics, and qualities of their or another entity's goods, services, or commercial activities.

81.     Such actions constitute unfair competition and are in violation of the Lanham Act, 15 U.S.C. § 1125(a).

82.     Upon information and belief Defendant GFM's conduct is a part of a deliberate plan to trade on the valuable goodwill established therein and was done for the intentional purpose of misleading the public into believing that GFM's services and products are in some way sponsored by, affiliated with or connected to Fundme.com's products and services advertised and sold under the mark, all of which are contrary to fact and irreparably harmful to Fundme.com.

83.     Fundme.com has been and will continue to be irreparably harmed by Defendant GFM's conduct unless this Court enjoins GFM from its unlawful conduct pursuant to 15 U.S.C. § 1116.

84.     As a result of Defendant GFM's deliberate and willful conduct, Fundme.com is entitled to damages, GFM's profits, attorneys' fees and costs and any and all other relief authorized by 15 U. S. C. § 1117.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

85.     Plaintiff Fundme.com hereby incorporates by reference the allegations

contained in the above paragraphs.

86.     Defendant GFM has benefited from the improper, unfair, and unauthorized use of Fundme.com's exclusive trademark rights in the FUNDME.COM mark to potential customers interested in raising money for business startup and/or expansion and its attendant goodwill.

87.     Defendant GFM has knowledge of and fully appreciates the benefits it has received from Fundme.com as a result of such actions.

88.     Defendant GFM would be unjustly enriched if permitted to retain the proceeds and benefits obtained from its actions.

89.     Equity and good conscience dictate that Defendant GFM be required to account for and turn over to Fundme.com an amount equal to the value of the benefits conferred upon GFM based upon money raised by GFM using the GOFUNDME mark for business startup and/or expansion.

**FIFTH CLAIM FOR RELIEF**
**(Declaratory Judgment – 28 U.S.C. § 2201)**

90.     Plaintiff Fundme.com hereby incorporates by reference the allegations contained in the above paragraphs.

91.     This Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201.

92.     GFM has accused Fundme.com of infringing on its GOFUNDME mark.

93.     GFM is currently infringing on Fundme.com's FUNDME.COM mark by offering crowdfunding services to raise money for business startup and/or expansion.

94.     There exists an actual case or controversy between Fundme.com and

GFM regarding their respective rights in their trademarks.

95.     Pursuant to 28 U.S.C. § 2201, *et seq.*, Fundme.com is entitled to

declaratory judgments.  Without limitation, the Court should declare as follows:

a.     That Fundme.com is not liable to GFM for infringing on the
GOFUNDME mark;

b.     That the registration for the GOFUNDME mark does not include
and does not grant any rights in regard to "personal" crowdfunding.

c.     That the registration for the GOFUNDME mark for use in
conjunction with "charitable fundraising services . . . by providing
individuals with the information and opportunity to make monetary
donations to their favorite charity" does not include personal
crowdfunding, but rather is limited in scope to use only with regard
to an independent, tax-exempt charitable organization (not an
individual), such as a 501(c)(3) entity.

d.     That GFM has and is continuing to infringe on Fundme.com's
FUNDME.COM mark through its use of the business and
entrepreneur category on its website;

e.     That GFM has and is continuing to infringe on Fundme.com's
FUNDME.COM mark by accepting crowdfunding campaigns
relating to business ventures.

f.     That GFM has and is continuing to infringe on Fundme.com's
FUNDME.COM mark by offering crowdfunding services to raise

money for business startup and/or expansion.

g.     That if GFM were to expand its already-infringing activities by

entering into the Title III crowdfunding market, GFM would be

further infringing upon Fundme.com's FUNDME.COM mark.

h.     That GFM is not entitled to expand the scope of its New GFM Mark

to overlap with or infringe upon Fundme's existing rights in the

FUNDME.COM mark.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A.     Judgment on each cause of action as requested.

B.     An award of interest, costs, and attorney fees as allowed by law.

C.     Such other relief as this Court deems appropriate, including injunctive

relief.

## JURY DEMAND

Fundme.com hereby demands a trial by jury on all issues so triable.


DATED this 4th day of February, 2016.

MAGLEBY CATAXINOS & GREENWOOD

_____
James E. Magleby
Edgar R. Cataxinos
Kennedy D. Nate

*Attorneys for Plaintiff Fundme.com, Inc.*

# Exhibit 1



# United States of America
## United States Patent and Trademark Office

# FUNDME.COM

**Reg. No. 4,421,467**

**Registered Oct. 22, 2013**

**Int. Cl.: 42**

**SERVICE MARK**

**PRINCIPAL REGISTER**

KELA CAPITAL, INC. (CAYMAN ISLANDS CORPORATION)
P.O. BOX 2503
40 LINWOOD STREET
GRAND CAYMAN, CAYMAN ISLANDS KY1-1104

FOR: PROVIDING A WEB SITE FEATURING TECHNOLOGY THAT ENABLES USERS TO RAISE VENTURE CAPITAL FOR BUSINESS START-UP AND BUSINESS EXPANSION , IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 3-7-2013; IN COMMERCE 3-7-2013.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-875,920, FILED 3-14-2013.

ALYSSA STEEL, EXAMINING ATTORNEY



Deputy Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

# Exhibit 2

## TRADEMARK ASSIGNMENT AGREEMENT

This Agreement is made on _23_, 2014, by and between Kela Capital, Inc., a corporation organized under the laws of the Cayman Islands ("Assignor"), and Fundme.com, Inc. a corporation organized under the laws of the State of Delaware ("Assignee") (collectively the "Parties"). This Trademark Assignment Agreement ("Agreement") will define the terms of the assignment of the FUNDME.COM mark from Assignor to Assignee.

## RECITALS

WHEREAS, Assignor is the sole and exclusive owner of the trademark registration for the mark identified more fully in the attached Schedule A (the "Trademark"), and further is the sole and exclusive owner of all business goodwill related therewith; and

WHEREAS, Assignee desires to acquire all right, title, and interest in and to the Trademark and all business goodwill related therewith;

NOW THEREFORE, in exchange for the mutual promises contained herein, and for good and valuable consideration, the sufficiency and receipt of which is hereby acknowledge, the Parties agree to be legally bound to the terms of this Agreement.

1. **Assignment of Trademark Rights.** Be it known that in consideration of the payment by Assignee to Assignor and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby sells, assigns, and transfers unto Assignee the full and exclusive entire right, title, and interest in and to the Trademarks, and the business goodwill associated therewith, including, without limitation, all renewals therefor, all proceeds therefor (including, but not limited to, all license royalties and proceeds of infringement suits), the right to sue for past, present, and future infringements, and the goodwill of the business associated with and symbolized by the Trademarks.

2. **Assignment of Goodwill.** The trademarks are being assigned in conjunction with the goodwill associated therewith, as well as with the right to sue for past, present, and future infringements. The Parties recognize and agree that an assignment of trademarks without the assignment of the associated goodwill would be invalid.

IN WITNESS WHEREOF, this Assignment has been duly executed on the day and year first above written.

Kela Capital, Inc.

By: _____          Name: _____

WENDY LARMER

**Fundme.com, Inc**

By:_____   Name:_____

       **James Borzilleri**
       **President**
       **Fundme.com, Inc.**

**SCHEDULE A**

**Trademark Registration**

**FUNDME.COM**

**REGISTRATION NO. 4,421,467**

**REGISTRATION DATE: October 22, 2013**

**REGISTRATION BODY: United States Patent and Trademark Office, Principal Register**

# Exhibit 3

GOODWIN │ PROCTER

Robert D. Carroll
617.570.1753
rcarroll@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

January 25, 2016

**VIA E-MAIL**

Attn: Corporate Counsel
FundMe.com
support@fundmesupport.freshdesk.com

Re:     **Use of FUNDME.COM Trademark in Violation of GoFundMe's Trademark Rights**

Dear Sir or Madam:

This firm is counsel to GoFundMe, a leading personal and charitable crowdfunding website. We write concerning the recent discovery that FundMe.com has been using the trademark FUNDME.COM in association with the marketing of personal and charitable crowdfunding products and services, rather than the commercial purpose for which it represented to the U.S. Patent and Trademark Office it would use its mark.

As you are probably aware, GoFundMe is an innovative crowdfunding service, which allows users to set up crowdfunding campaigns and accept donations to support their personal and charitable causes. GOFUNDME is a federally registered trademark of GoFundMe.  And your use of the FUNDME.COM mark in connection with personal and charitable crowdfunding campaigns is likely to cause confusion among consumers as to the affiliation, connection or association of your products and services, and is likely to mislead consumers into believing that such products and services are sponsored by or affiliated with GoFundMe.

GoFundMe has used the GOFUNDME mark continuously for at least five (5) years in the personal and charitable crowdfunding market. The mark has been registered since September 4, 2012, in connection with these services, and was first used in commerce on May 1, 2010.  The GOFUNDME mark is a famous mark.

 In contrast, the FUNDME.COM mark was not registered until March 14, 2013, was first used in commerce a few days before that, on March 7, 2013, and was registered for "providing a web site featuring technology that enables users to raise venture capital for business start-up and business expansion," not for personal and charitable campaigns. The shift of use of the FUNDME.COM mark from its registered purpose to the personal and charitable crowdfunding space leads to a substantial likelihood of confusion between the two marks.

GOODWIN | PROCTER

Attn: Corporate Counsel
January 25, 2016
Page 2


In connection with its mission, GoFundMe has expended substantial resources to ensure the authenticity and legality of all GoFundMe campaigns—efforts not replicated by FundMe.com's offering of the same or substantially similar services.  Because of GoFundMe's efforts, it has established and maintained extensive goodwill and an excellent reputation in the industry; the GOFUNDME mark has come to be associated distinctly in the mind of customers in the marketplace with GoFundMe.  In addition, use of the mark in the personal and charitable crowdfunding context without proper controls on authenticity and legality is likely to tarnish GoFundMe's mark and reputation.  In fact, GoFundMe first learned of Fundme.com through public complaints regarding a fraudulent, copycat version of a GoFundMe campaign published improperly on Fundme.com's website.

Due to these concerns, and because unauthorized use of GoFundMe's trademark constitutes an infringement of GoFundMe's trademark rights, we request that you cease and desist in any further use of FUNDME.COM or any confusingly similar mark in association with the marketing, sale, distribution, or identification of personal and charitable crowdfunding services.  Please write to us within ten (10) days, confirming that Fundme.com will permanently cease and desist from using the FUNDME.COM mark in connection with personal and charitable crowdfunding services, and the timeline on which you will commit to ceasing such use.

It is our sincere hope to resolve this issue without resorting to litigation, though we are prepared to go to great lengths to protect GoFundMe's brand, reputation and trademark rights.  We look forward to hearing back from your counsel.


Sincerely,


Robert D. Carroll

RDC

# Exhibit 4

# United States of America

### United States Patent and Trademark Office

# GOFUNDME

**Reg. No. 4,201,895**

**Registered Sep. 4, 2012**

**Int. Cl.: 36**

**SERVICE MARK**

**PRINCIPAL REGISTER**

CALIFORNIA PRODUCTS SHOP, INC. (CALIFORNIA CORPORATION)
PO BOX 711798
SAN DIEGO, CA 92171

FOR: CHARITABLE FUNDRAISING SERVICES, NAMELY, BY PROVIDING INDIVIDUALS WITH THE INFORMATION AND OPPORTUNITY TO MAKE MONETARY DONATIONS TO THEIR FAVORITE CHARITY, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-1-2010; IN COMMERCE 5-1-2010.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-523,336, FILED 1-23-2012.

JUSTINE D. PARKER, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

<div style="border">

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

</div>

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

<div style="border">

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

</div>

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date).  The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications
at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE:   Fees and requirements for maintaining registrations are subject to change.   Please check the
USPTO website for further information.   With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.